THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| JILL E. WILSON, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 7:03-CV-0083-BF(R) |
| § | |
| JO ANNE B. BARNHART, § | ECF |
| Commissioner of Social Security § | |
| Administration, § | |
| § | |
| Defendant. § | |

**MEMORANDUM OPINION AND ORDER**

This is a consent case before the United States Magistrate Judge. Before the Court is Plaintiff Jill E. Wilson's ("Plaintiff") social security appeal. The Court has reviewed Plaintiff's brief, the Commissioner of Social Security's ("the Commissioner") brief, and Plaintiff's reply. For the reasons stated below, the Court **AFFIRMS in part** and **REVERSES** and **REMANDS in part** the final decision of the Commissioner.

**I. Background**

   **A. Procedural History**

Plaintiff seeks judicial review of the Commissioner's final decision denying her claim for disability benefits. Plaintiff filed her application for disability benefits on November 20, 2000, claiming a disability onset date of May 11, 1999. (Tr. at 66-68.) The Social Security Administration denied both her initial application and her request for reconsideration. (*Id.* at 53-57, 59-62.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 63.) Plaintiff had a hearing on July 23, 2002, before ALJ Thomas E. Bennett. (*Id.* at 26.) On January 28, 2003, the ALJ issued an unfavorable decision, after concluding that Plaintiff could perform her past

relevant work. (*Id.* at 23-24.) On March 27, 2003, the Appeals Council denied Plaintiff's request for review, thus rendering the ALJ's decision the final decision of the Commissioner. (*Id.* at 5-6.) Plaintiff filed this lawsuit on May 7, 2003.

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ did not address the evidence of the side effects of Plaintiff's medication. (Pl.'s Br. at 17.) Plaintiff also argues that the ALJ did not apply the appropriate legal standard to the opinion of Plaintiff's treating physician. (*Id.* at 17-20.)

**B. Factual History**

1. Plaintiff's Age, Education, and Work Experience

Plaintiff was born on February 12, 1970. (Tr. at 29.) She has a bachelor's degree in psychology. (*Id.* at 30.) Plaintiff has past relevant work experience as a case worker, a substitute teacher, a sales representative, a general clerk, a child care monitor, and a volunteer coordinator. (*Id.* at 15.)

2. Plaintiff's Medical Evidence

In her disability report, dated November 10, 2000, Plaintiff listed her disabling conditions as "spondylolisthesis, severe and chronic back pain because of [spondylolisthesis], [and] severe and chronic migraines." (*Id.* at 95.) Plaintiff claims a disability onset date of May 11, 1999. (*Id.* at 66.) Because Plaintiff has an extensive medical history, the Court only discusses the medical evidence of record that is relevant to the two points of error alleged by Plaintiff.

Plaintiff has experienced back pain since she was twelve years old, and her back pain worsened after the birth of her last child in May 1999. (*See id.* at 131.) Grade 2 spondylolisthesis is the cause of Plaintiff's back pain. (*Id.*) In addition to back pain, Plaintiff experienced pain that

2

radiated into her right buttock, hip, and throughout her right leg. (*See id.* at 129, 131.)

On February 29, 2000, and March 28, 2000, Dr. Stephen H. Hochschuler ("Dr. Hochschuler") examined Plaintiff. (*Id.* at 131, 121.) During both examinations, Dr. Hochschuler stated that Plaintiff needed surgery to stabilize her back. (*Id.*) Dr. Marcom E. Herren also has examined Plaintiff multiple times relating to her back pain. (*See* Tr. at 155, 186, 187-89, 192, 193-95.)

On March 29, 2000, Dr. Craig C. Callewart ("Dr. Callewart") examined Plaintiff. Dr. Callewart recommended that Plaintiff undergo sacrum fusion surgery, which he stated could prevent the progression of Plaintiff's spondylolisthesis and could relieve seventy-five percent of her pain symptoms. (*Id.* at 203.) Dr. Callewart examined Plaintiff again on May 24, 2000. (*See id.* at 201.)

Before Plaintiff's surgery, she took Prozac and Xanax for depression and anxiety. (*Id.* at 206.) She took Darvocet and Lortab for migraine headaches. (*Id.*) Plaintiff also took various medications and injections to control her back pain, including epidural steroid injections. (*Id.* at 195.)

Dr. Callewart performed sacrum fusion surgery upon Plaintiff on June 5, 2000. Following her surgery, Plaintiff experienced edema of her lower extremities and was hospitalized from June 21, 2000, through June 24, 2000. (*Id.* at 135.)

Dr. Callewart's physician's assistant examined Plaintiff on June 26, 2000. (*Id.* at 200.) The physician's assistant encouraged Plaintiff to walk frequently and to rest. (*Id.*) He also instructed Plaintiff not to sit down for long periods of time, not to lift anything heavier than a gallon of milk, and to slowly increase her periods of sitting and walking. (*Id.*)

Dr. Callewart examined Plaintiff on July 26, 2000. (*Id.* at 199.) He noted that Plaintiff's

overall condition had improved but that she was experiencing thigh and calf tenderness. (*Id.*) He told Plaintiff to continue a program of walking and swimming and not to lift anything weighing more than one or two gallons of milk. (*Id.*)

Dr. Callwart's physician's assistant saw Plaintiff again on November 21, 2000. (*Id.* at 198.) He noted that Plaintiff was feeling better but still had pain around the site of her surgery. (*Id.*) She told him that standing for long periods of time made her pain worse. (*Id.*) He recommended that she engage in aerobic conditioning and gentle stretching but that she avoid high impact activities and wear a brace if she did any repetitive bending. (*Id.*)

Dr. Callewart saw Plaintiff on January 17, 2001. (*Id.* at 197.) Plaintiff still was experiencing some pain and numbness. (*Id.*) She had stumbled a few times and felt tired. (*Id.*) Dr. Callewart told Plaintiff to participate in a home walking program, entailing walking for forty minutes, three to four times a week. (*Id.*)

Dr. Callewart completed a "Physical Residual Functional Capacity Questionnaire" on July 22, 2002. (*Id.* at 241.) Dr. Callewart stated that during a typical workday, Plaintiff's constant pain and other symptoms would interfere with the concentration required to complete even simple work tasks. (*Id.* at 242.) He stated that Plaintiff could tolerate moderate work stress "okay." (*Id.*) Dr. Callewart also stated that, in his estimation, Plaintiff is capable of the following: walking one city block without resting and without severe pain; sitting for ten minute intervals before needing to stand up; standing for ten minute intervals without needing to sit down or walk around; and sitting, and standing or walking, for less than two hours total in an eight-hour workday. (*Id.* at 242-43.) In addition, Dr. Callewart said that Plaintiff needs to walk around every ten minutes during an eight-hour workday. (*Id.* at 243.) He thought that Plaintiff would require a job that permitted her to shift

4

at will from sitting, standing, or walking and that would allow her to take unscheduled breaks at fifteen minute intervals. (*Id.*) He stated that if Plaintiff engaged in prolonged sitting she would need to elevate her legs at a forty-five degree angle. (*Id.*) Dr. Callewart said that Plaintiff needed to use a cane or other assistive device while engaging in occasional standing or walking and that she could lift weights of less than ten pounds "rarely." (*Id.*) Dr. Callewart stated that she could rarely twist her body and could never stoop, crouch, or climb ladders or stairs. (*Id.* at 244.) He thought that Plaintiff would have good days and bad days, but that her impairments and treatments would likely cause her to miss more than four days of work each month. (*Id.*) He classified her condition as permanent and likely to worsen with age. (*Id.*)

    3. <u>Plaintiff's Hearing</u>

On July 23, 2002, Plaintiff had a hearing before ALJ Thomas E. Bennett. (*Id.* at 26.) Attorney Tom Schrandt ("Mr. Schrandt") represented Plaintiff at this hearing. (*Id.*) As with the medical evidence, the Court only relates the relevant portions of Plaintiff's hearing.

Plaintiff testified that she experiences constant pain in her lower back and legs. (*Id.* at 40.) She said that she has good and bad days. (*Id.*) A "bad day" consists of staying in bed for most of the day. (*Id.*) A "good day" consists of taking care of her children's basic needs and doing chores around the house. (*Id.*) Due to numbness in her feet, Plaintiff testified that she "scoots" her feet when she walks and occasionally trips and falls. (*Id.* at 42.) She said that her pain medications help her pain but that they make her "drowsy and dizzy and lethargic or not alert." (*Id.*) Plaintiff testified that half of her days are "good days" and half are "bad days." (*Id.*) Plaintiff said that she can only walk or stand for ten minutes before having to sit down. (*Id.* at 44.)

The Vocational Expert ("VE"), Clifton A. King, testified that an individual with the residual

5

functional capacity that the ALJ attributed to Plaintiff could perform her past relevant work as a volunteer coordinator. (*Id.* at 48.) Upon questioning by Mr. Schrandt, the VE testified that, if someone experienced enough pain to interfere with his or her attention and concentration, that person would be unable to perform simple work tasks on a constant basis. (*Id.* at 48-49.) Also upon questioning by Mr. Schrandt, the VE testified that, if a person were going to miss four to five days of work a month, he or she would not be able to perform unskilled employment or professional level employment. (*Id.* at 49.)

### C. The ALJ's Findings

The ALJ issued an unfavorable decision on January 28, 2003. (*Id.* at 24.) The ALJ ultimately concluded that Plaintiff is not disabled because she is capable of performing her past relevant work as a volunteer coordinator. (*Id.* at 23.) The ALJ determined that Plaintiff has the residual functional capacity to do the following: stand and/or walk a maximum of four hours during the work day; sit as required; occasionally lift and/or carry objects weighing twenty pounds; frequently lift and/or carry objects weighing ten pounds; occasionally stoop, crouch, and climb ramps or stairs. (*Id.*) The ALJ concluded that Plaintiff cannot crawl or climb ladders, ropes, or scaffolds or work with vibrating equipment. (*Id.*) The ALJ stated that the medical evidence established that Plaintiff has severe spondylosis and spondylolisthesis with a history of fusion. (*Id.*) The ALJ also stated that Plaintiff's allegations and testimony were not entirely credible, considering her report to examiners, the findings of the examinations, the medical reports, and the extent of her treatment. (*Id.*) In reaching these conclusions, the ALJ did not give the opinion of Plaintiff's treating physician, Dr. Callewart, "controlling weight." (*Id.* at 20.)

## II. Standard of Review

To receive social security benefits, Plaintiff must establish that she is disabled for purposes of the Social Security Act. *Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (per curiam). The Social Security Act defines a disability as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings; (2) an individual who does not have a "severe impairment" will not be found to be disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing the work he or she has done in the past, a finding of "not disabled" must be made; and (5) if an individual's impairment precludes him or her from performing his or her past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. § 404.1520(b)-(f)). The claimant bears the burden of proving he or she is disabled under the first four steps. *Leggett*, 67 F.3d at 564. If at any point during the examination of the first four steps the Commissioner determines the claimant is or is not disabled, the inquiry terminates. *Id.* If the claimant meets his or her burden under the first four steps, the Commissioner then bears the burden at step five to show the claimant is capable of performing other gainful employment available in the

national economy. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The Commissioner may satisfy this burden by referencing the Medical-Vocational Guidelines of the regulations or by expert vocational expert testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

The Commissioner's determination receives great deference. *Leggett*, 67 F.3d at 564. Title 42, section 405(g) of the United States Code Annotated limits judicial review of the Commissioner's findings to: (1) whether substantial evidence supports the decision and (2) whether the Commissioner utilized the proper legal standard. *Greenspan*, 38 F.3d at 236; 42 U.S.C.A. § 405(g) (1999). Substantial evidence is "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The Court does not re-weigh the evidence, retry the issues, or substitute its own judgment for that of the Commissioner. *Greenspan*, 38 F.3d at 236. Instead, the Court scrutinizes the record to determine whether substantial evidence supports the decision. *Id.*

### III. Discussion

Plaintiff states two reasons why the Court should reverse the decision of the Commissioner. First, Plaintiff argues that the ALJ did not consider Plaintiff's allegations of the side effects of her medication and that the Social Security Regulations obligate the ALJ to consider such allegations and explain the weight given to them. (Pl.'s Br. at 17.) Second, Plaintiff claims that the ALJ improperly rejected the opinion of Dr. Callewart, Plaintiff's treating physician, and that the ALJ did not properly evaluate what weight to give Dr. Callewart's opinion. (*Id.* at 18-20.)

**A. Did the ALJ Properly Consider the Side Effects of Plaintiff's Medication?**

Plaintiff claims that the ALJ did not consider Plaintiff's testimony at her hearing that her pain medications "have the side effects of making me drowsy and dizzy and lethargic or not alert." (*Id.* at 16 (citing Tr. at 42).) Plaintiff argues that the ALJ should have considered Plaintiff's allegations and explained the weight that he assigned to them. (*Id.* at 17 (citing *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999).)

The Social Security Regulations require the ALJ to consider the "type, dosage, effectiveness, and side effects of any medication." 20 C.F.R. § 404.1529(c)(3)(iv). Contrary to Plaintiff's assertion, the Court finds that the ALJ did consider Plaintiff's testimony about the side effects of her medication. In his decision, the ALJ stated that "[t]he claimant reported difficulty with concentration or with memory." (Tr. at 18.) The only time that Plaintiff alleged symptoms interfering with her concentration or memory was her testimony at the hearing that her pain medication causes her to not be alert, to be drowsy, and that she does not "know what's going on." (*See id.* at 42, 44-45.)

Although the ALJ did not specifically reference Plaintiff's symptoms affecting her concentration or memory as "side effects of her medication," the ALJ did address Plaintiff's testimony about the side effects and state why he did not give her testimony any weight. The ALJ stated that the medical evidence indicated that Plaintiff's mental status is normal; she has no reported episodes of restrictions upon her concentration, persistence or pace; she has not experienced decompensation lasting for an extended period; she has been able to function independently outside the home and has not needed a highly supportive environment; and she has been able to cope with minimal change or increased mental demands. (*Id.* at 18.) The ALJ basically explained that no objective medical evidence supported Plaintiff's testimony.

9

The only arguable error the ALJ committed when addressing Plaintiff's testimony about her side effects was that he did not specifically state that he was addressing "the side effects of medication." The Court concludes that the absence of such a label did not substantially prejudice Plaintiff's rights because the ALJ did address her allegations and explain why he did not give them any weight. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam) (stating: "Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected."). Accordingly, the Court affirms the Commissioner on this ground.

### B. Did the ALJ Give the Treating Physician's Opinion the Proper Weight?

Plaintiff next argues that the ALJ improperly rejected the opinion of Plaintiff's treating physician, Dr. Callewart. (Pl.'s Br. at 18-20.) Dr. Callewart stated the following in his responses to the questionnaire: Plaintiff can rarely lift and carry less than ten pounds in a competitive work situation; she can stand, walk or sit for less than two hours total in an eight-hour workday; Plaintiff's pain and other symptoms would constantly interfere with her concentration; and she was likely to be absent from work more than four days a month. (Tr. at 242-44.)

The ALJ assigned Dr. Callewart's opinion "little weight." The ALJ did not dispute that Dr. Callewart was Plaintiff's treating physician. (Tr. at 20 (referring to Dr. Callewart as a "treating source").) The ALJ stated the following as his reasons for assigning Dr. Callewart's opinion "little weight":

> There is no evidence that Dr. Callewart had seen the claimant since January 2001, or that he had given the claimant any limitations since shortly following the surgery. There is no evidence that Dr. Callewart had made inquiry of some of the issues expressed, such as interruptions of concentration due to pain. There also is no evidence of what was told to Dr. Callewart, which might have influenced the opinion. There is no explanation of discrepancies between the contemporaneous treating notes and the statement the day before

10

> the hearing.  It appears that the opinion of Dr. Callewart is that as an advocate in support of the claimant's application for benefits, rather than as an objective treating source.

(*Id.*)  This is the only reasoning the ALJ provided to explain the weight he gave Dr. Callewart's opinion.

   1. Did the ALJ Apply the Correct Standard to Determine if the ALJ's Opinion Should Receive "Controlling Weight?"

The first issue the Court addresses is whether the ALJ applied the correct analysis to determine if Dr. Callewart's opinion should receive "controlling weight."  Generally, the treating physician's opinion is given great weight in the determination of disability.  *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Leggett*, 67 F.3d at 566.  In fact, the treating physician's opinion on the nature and severity of a patient's impairment will receive "controlling weight," if the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence."  *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (per curiam) (citing 20 C.F.R. § 404.1527(d)(2)).  The ALJ, however, alone determines the status of a claimant's disability and may reject a physician's opinion if the evidence supports a contrary conclusion.  *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994).

The Court concludes that the ALJ did not apply the proper standard when evaluating Dr. Callewart's opinion.  The first way in which the ALJ failed to apply the proper standard is that the ALJ failed to enunciate why he declined to give Dr. Callewart's opinion "controlling weight."  The ALJ explained the reasons that he gave the opinion "little weight," but he never addressed why it did not receive controlling weight.  The Social Security Regulations mandate that a treating physician's opinion receives "controlling weight" if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial

evidence." *Martinez*, 64 F.3d at 176 (citing 20 C.F.R. § 404.1527(d)(2)). The ALJ did not weigh Dr. Callewart's opinion against the rest of the medical evidence to determine if it was consistent with "other substantial evidence." After assigning "little weight" to Dr. Callewart's opinion, the ALJ went on to discuss state agency opinions that differed from Dr. Callewart's opinion, but the ALJ did not discuss these agency opinions when determining why Dr. Callewart's opinion did not receive controlling weight. (*See* Tr. at 20-21.) Nor did the ALJ discuss whether "medically acceptable clinical and laboratory diagnostic techniques" support Dr. Callewart's opinion. Other than a mere recital that treating physicians' opinions generally receive controlling weight, the ALJ's opinion appears to circumvent "controlling weight" analysis completely.[1] (*See id.* at 20.)

The Commissioner argues that the ALJ did not afford Dr. Callewart's opinion "significant weight" because the ALJ found that his opinion was not supported by objective findings. (Def.'s Br. at 7 (citing Tr. At 20).) The ALJ, however, never stated that objective evidence did not support Dr. Callewart's opinion, nor did he generally explain how the opinion lacked evidentiary support. (*See* Tr. at 20.)

The Commissioner also argues that the ALJ found that Dr. Callewart was not Plaintiff's treating physician, and therefore his opinion was not entitled to controlling weight. (Def.'s Br. at 8.) The ALJ's decision contains no discussion of Dr. Callewart not being Plaintiff's treating physician. The ALJ did state that Dr. Callewart had not examined Plaintiff since July 22, 2002, but

---

[1]Even when the ALJ recited that a treating physician's opinion receives controlling weight, he misstated the legal standard. He stated that "[m]edical opinions of treating physicians are given controlling weight concerning the claimant's impairments and the degree of severity and limitations therefrom, when adequately supported and not contradicted by other evidence" (Tr. at 20); whereas the actual determination hinges upon whether the treating physician's opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence."

12

he only stated that as one reason he assigned Dr. Callewart's opinion "little weight," not to support a conclusion that Dr. Callewart was not a treating source. (Tr. at 20.) The Court finds no support for the Commissioner's argument in the ALJ's decision. On the contrary, the ALJ specifically refers to Dr. Callewart as a "treating source," and the ALJ's discussion of Dr. Callewart's opinion directly follows the ALJ's summary of the legal standard applied to the opinion of a treating source. (*See* Tr. at 20.) Accordingly, the Court finds that the ALJ did find that Dr. Callewart was a treating physician, and the ALJ, therefore, should have addressed whether Dr. Callewart's opinion should receive "controlling weight."

> 2. Did the ALJ Apply the Correct Standard to Determine What Weight to Assign Dr. Callewart's Opinion?

The next issue the Court addresses is whether the ALJ applied the correct standard to decide what weight to give the opinion. An ALJ may reject a treating physician's opinion for good cause. *Greenspan*, 38 F.3d at 237. The Social Security Regulations require an ALJ to give "good reason" for the weight assigned to a treating physician's opinion. 20 C.F.R. § 404.1527(d)(2). Section 404.1527(d)(2) requires the ALJ to consider specific factors "to assess the weight to be given to the opinion of a treating physician when the ALJ determines that [the opinion] is not entitled to 'controlling weight.'" *Newton*, 209 F.3d at 456. The factors an ALJ should consider when determining what weight to assign to a treating physician's opinion include: (1) the physician's length of treatment; (2) the physician's frequency of examination; (3) the nature and extent of the treatment of the relationship; (4) the support of the physician's opinion afforded by the medical evidence of the record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. 20 C.F.R. § 404.1527(d).

The second way the ALJ failed to apply the proper standard to Dr. Callewart's opinion is that

he failed to address all the factors listed in § 404.1527(d) of the Social Security Regulations and how each factor influenced his decision to give Dr. Callewart's opinion "little weight." "An ALJ is required to consider each of the § 404.1527(d) factors when the ALJ intends to reject or give little weight to a treating specialist's opinion." *Newton*, 209 F.3d at 456. The ALJ summarily referenced the above enumerated factors and then proceeded to assign Dr. Callewart's opinion "little weight" without discussing all of the factors. (*See* Tr. at 20.)

The ALJ partially addressed two of the § 404.1527(d) factors. He somewhat discussed Dr. Callewart's frequency of examination when he stated that Dr. Callewart had not examined Plaintiff since July 22, 2002. (Tr. at 20.) The ALJ passingly addressed the consistency of Dr. Callewart's opinion with the record as a whole when he mentioned "discrepancies between the contemporaneous treating notes and the statement the day before the hearing." The ALJ did not, however, describe the discrepancies. (Tr. at 20.) The ALJ later discussed the opinions of the State agency's examining physicians, but the ALJ never compared Dr. Callewart's opinion with the treatment notes of Plaintiff's other treating physicians. (*See id.* at 21.)

The ALJ ignored the remaining § 404.1527(d) factors and failed to thoroughly discuss the factors upon which he did rely. The ALJ did not address how long Dr. Callewart had been treating Plaintiff, how many times he had examined her, the precise nature of their treatment relationship, and the support afforded to Dr. Callewart's opinion by the medical evidence of record. Nor did the ALJ address how each of these factors affected his decision to assign Dr. Callewart's opinion "little weight." Instead, without providing the evidence or reasoning that caused him to reach these conclusions, the ALJ summarily determined that Dr. Callewart was acting as an advocate on Plaintiff's behalf and was not objective. (Tr. at 20.) The Court does not require the ALJ to exhibit

14

procedural perfection when applying the § 404.1527(d) factors to a treating source's opinion, but the Court does require the ALJ to at least address each factor when rejecting or assigning little weight to a treating source's opinion. *See, e.g., Alejandro v. Barnhart*, 291 F. Supp.2d 497, 508-09 (S.D. Tex. 2003) (accepting as sufficient the ALJ's narrative discussion of the 20 C.F.R. § 404.1527(d) factors, even though "the ALJ did not explicitly and specifically reference the factors").

Accordingly, the Court reverses the decision of the Commissioner and remands this case with the following instructions to the ALJ: (1) the ALJ should reconsider whether Dr. Callewart's opinion should receive controlling weight and specifically state the reasons why he does or does not afford it controlling weight, in accordance with the standard outlined in 20 C.F.R. § 404.1527(d)(2); and (2) if the ALJ determines that Dr. Callewart's opinion is not entitled to controlling weight, when deciding what weight to assign to Dr. Callewart's opinion, he should consider and discuss each factor outlined in C.F.R. § 404.1527(d) and explain how each factor influences his determination.

## IV. Conclusion

The ALJ correctly considered Plaintiff's allegations of side effects caused by her medication, and the Court **AFFIRMS** the final decision of the Commissioner on this ground. The ALJ did not apply the correct legal standard to the opinion of Plaintiff's treating physician, Dr. Callewart, and the Court **REVERSES** and **REMANDS** the final decision of the Commissioner on this ground with the instructions detailed above.

**SO ORDERED.** April 20, 2006.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE